UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

| | | |
|---|---|---|
| KIMBERLY POWERS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:05-cv-117 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| THOMAS M. COOLEY LAW SCHOOL, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | |
| | ) | |

This matter is before the court on plaintiff's motion for reconsideration of the court's order of September 8, 2006 (docket # 94), which substantially denied plaintiff's motion for discovery sanctions and other relief. For the reasons set forth below, the court finds that plaintiff's motion is meritless. The motion (docket # 100) will therefore be denied without the necessity of a response by defendant or a hearing. *See* W.D. MICH. LCIVR 7.4(b).

## Background

This is a diversity action brought by a former student of the Thomas M. Cooley Law School. Plaintiff sues under the Michigan Persons With Disabilities Civil Rights Act, MICH. COMP. LAWS § 37.1101-.37.1607, alleging that the law school failed to grant her reasonable accommodations necessitated by problems with her vision. Part of the factual underpinning of plaintiff's case is the allegation that the computer systems maintained by the law school to assist persons with visual disabilities repeatedly malfunctioned, especially during plaintiff's final examinations.

On August 18, 2006, plaintiff's counsel, Joseph Curi, filed a discovery motion denominated "Plaintiff's Motion to Compel Defendant Law School to Provide Work Orders in Compliance with the May 5, 2006 Discovery Order, to Allow for the Re-Taking of Depositions, to Extend Discovery, and For Sanctions." (docket # 84).  The gravamen of plaintiff's motion was that the law school had violated the court's discovery order entered on May 5, 2006, by failing "to provide Plaintiff with the work orders outlined in the May 5, 2006 discovery order." (Motion, ¶ 2). The court's discovery order required, among other things, that defendant produce all work orders to the IT Department involving three specified rooms in defendant's Lansing campus for the period July 30, 2002 through December 31, 2003.  (Order, docket # 73, ¶ C).  Plaintiff's attached brief set forth a number of arguments concerning defendant's alleged failure to produce the work orders required by the May 5 discovery order.  Among the relief requested was an order "compelling Defendant law school to produce, at the law school's expense, all of the work orders outlined in the May 5, 2006 Discovery Order." (Brief, docket # 84, at 13).  At no point in her motion or brief did plaintiff seek an order compelling the law school to allow plaintiff's expert an opportunity to do his own inspection and investigation of defendant's database to extract allegedly relevant information.

In response to plaintiff's motion, defendant presented the court with the affidavits of both Greg Colegrove (Director of IT Operations of Cooley Law School) and Sally Backofen (the law school's Director of Information Technology Services).  (docket # 89, Exs. 2, 3).  These affidavits directly rebutted plaintiff's allegations concerning defendant's alleged noncompliance with the court's discovery order and demonstrated that, to a significant extent, plaintiff and her counsel misunderstood the law school's system for assisting students and faculty with computer problems and for generating work orders.

The court conducted a hearing on plaintiff's motion to compel on September 8, 2006. The hearing consumed one hour and twenty-five minutes. Plaintiff was personally present. The focus of the hearing was whether defendant had complied with the court's previous discovery order, which required a new search for work orders covering three specific rooms in the law school's Lansing campus from July 30, 2002, through December 31, 2003. The defense affidavits disclosed that the law school had implemented a new computerized work order system at or around July 30, 2002, the beginning of the time period covered by the discovery order. The old system was called "Track It," while the new system was denominated "HelpStar." According to the Colegrove affidavit (docket # 89, Ex. 2, ¶ 4), the new HelpStar system was implemented on or about July 30, 2002, but the old Track It system continued in operation for a few months thereafter on a parallel basis. (*Id.*). The affidavit reported that the ability to electronically retrieve documents from the Track It system was lost when that system was discontinued. (*Id.*). However, the law school had previously produced in paper form several work orders that existed on the Track It system that fell into the relevant time period and were responsive to the court's order. Consequently, although it is no longer possible to search electronically for responsive documents dated within the two- or three-month "overlap" period, defendant was able to produce several responsive documents from this period that existed in paper form.

During the hearing, therefore, it became apparent from an examination of the affidavits and other factual material before the court that (1) the law school had complied with the court's order to perform a new computer search for relevant work orders in the HelpStar system; (2) the search of the HelpStar system was conducted in a thorough and good-faith manner and all responsive documents were produced; (3) a computer search of the obsolete Track It system covering

the two- or three-month "overlap" period was not reasonably practicable; (4) defendant had, however, produced responsive documents in paper form from the Track It system; and (5) the number of work orders produced in paper form from the Track It system was consistent with the number of responsive work orders for other months.

Plaintiff's counsel then shifted gears, orally asking for permission to have plaintiff's expert conduct a forensic search of the law school's computer in an effort to extract relevant information from the Track It system. As noted above, plaintiff's motion did not ask for this relief. Rather than rejecting plaintiff's oral request out of hand, the court asked plaintiff's counsel a number of questions directed to the factors made relevant by Rule 26(b)(2). One of the court's questions concerned the number of work orders that defendant had produced in discovery that pertained to the Kurzweil machine, one of the adaptive devices at issue in this case. Plaintiff's counsel informed the court that he had 50 to 75 work orders regarding the Kurzweil system. This information was relevant to at least two of the Rule 26(b)(2) inquiries: whether the party seeking discovery has had an ample opportunity to obtain the information sought and whether the burden or expense of continued discovery outweighs its likely benefit.

After hearing from both parties, the court determined that the balance of factors under Rule 26(b)(2) did not favor the intrusive relief that plaintiff's counsel injected into the discovery hearing by oral motion. The court found that, given the number of paper work orders produced by defendant for the short "overlap" period, it was not likely that significant other work orders would be found and that discovery of the few additional work orders that might theoretically lurk in the Track It system was not worth the delay, expense, and intrusion into the law school's computer

-4-

system.  On this basis, the court denied plaintiff's unpled, oral request for a forensic inspection of the law school's computers.

Now before the court is plaintiff's motion for reconsideration.  In the motion, plaintiff's counsel asserts that he misinformed the court concerning the number of work orders involving the Kurzweil machine.  Plaintiff now claims that the correct number of work orders is 31, and that some of them do not deal with substantive problems.  On this basis, plaintiff argues that the court's order was based on "a palpable defect" by which the court was misled and seeks an order allowing plaintiff's expert to inspect defendant's computer.

## Discussion

### I.     Compliance With the Mandatory Requirements of Fed. R. Civ. P. 37(a) and W.D. Mich. LCivR 7.1(d)

The court notes at the outset the perfunctory and insouciant effort by plaintiff's counsel to comply with the mandatory requirements of Rule 37(a) and the Local Rules of this court. Rule 37(a)(2)(B) requires that any discovery motion include certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to resolve the matter without court action.  The Local Rules of this court specifically require that in the case of discovery motions, counsel "shall confer in person or by telephone in a good faith effort to resolve each specific discovery dispute."  W.D. MICH. LCIVR 7.1(d).  Plaintiff's motion indicates that on September 18, 2006, plaintiff's counsel sent defense counsel a fax concerning the proposed motion.  At 2:34 p.m. on the same day, plaintiff's counsel called the office of defense counsel and was informed that defense counsel was not in the office.  Plaintiff left a voicemail and then filed his motion without speaking to defense counsel.  (docket # 100, ¶ 3).  According to the

court's CM/ECF system, the motion was filed at 4:23 p.m. on the same day.  Plaintiff's counsel

therefore allowed defense counsel less than one business day in which to react to the issue, clearly

an unreasonable time.  Plaintiff's counsel has displayed impatience and not a "good-faith effort to

resolve each specific discovery dispute," as required by this court's rules.  This failure, in and of

itself, is grounds for denial of the motion and imposition of sanctions.

### II.    Lack of Merit

The Local Rules of this court establish the following standards for motions for

reconsideration:

> Grounds - Generally, and without restricting the discretion of the Court, motions for
> reconsideration which merely present the same issues ruled upon by the Court shall
> not be granted.  The movant shall not only demonstrate a palpable defect by which
> the Court and the parties have been misled, but also show that a different disposition
> of the case must result from a correction thereof.

W.D. MICH. LCIVR 7.4(a).  Plaintiff's counsel points to his own act of misinforming the court as the

source of the "palpable defect" leading the court to an erroneous decision.  Just as plaintiff's original

motion was based in substantial part on the misunderstanding of the law school's computer system,

plaintiff's motion for reconsideration is based on a misunderstanding of the law and of the basis for

this court's previous ruling.

Although plaintiff's counsel has filed two lengthy discovery motions, neither motion

has ever requested forensic examination of defendant's computers nor presented any authority in

support of such relief.  The request came first orally during a motion hearing and then in the pending

motion for reconsideration.  Again, counsel makes only a factual argument and presents no legal

authority in support of such relief.  It therefore falls upon the court once more to analyze the issue, to make clear why plaintiff has not shown herself entitled to the relief requested.

The federal courts have assumed that the provisions of Rule 34(a) concerning inspection, copying, and testing of tangible objects are sufficient to authorize a court to order inspection of the adversary's computer.  *See, e.g., Simon Property Group, LP v. MySimon, Inc.*, 194 F.R.D. 639, 640-41 (S.D. Ind. 2000).[1]  The question presented in the present case is whether the court should exercise its authority to do so in the circumstances presented.

In most cases, the computer itself is not evidence.  It is merely the instrument for creating evidence (like a typewriter) or the means of storing it (like a file cabinet).  Increasingly, however, litigants have sought access to the opponent's computer or other electronic devices to search for evidence, especially for deleted e-mails.  The federal courts have generally resisted such incursions.  *In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003), is instructive.  In that case, the Eleventh Circuit granted mandamus to prevent implementation of a district court order allowing plaintiffs to inspect certain databases on Ford's computers.  Plaintiffs asserted that Ford had not been forthright in providing documents in response to discovery requests, and the district court granted them the right to perform their own examination of Ford's computer.  The Eleventh Circuit found that this was an abuse of discretion.  The court remarked that Rule 34(a) requires the responding party to search his records to produce the required, relevant data.  "Rule 34(a) does not give the

---

[1] The advisory committee notes to the pending amendments to Rule 34(a), however, express doubt on this subject.  "The court rule is not clear that such testing or sampling is authorized; the amendment expressly permits it."  Proposed Amendment to Fed. R. Civ. P. 34, advisory committee's note (Aug. 2004).  This court will nevertheless proceed on the assumption that, in an appropriate case, the court already has such authority under Rule 34.  The amendments to Rule 34, slated to take effect on December 1, 2006, clarify the court's power in this regard.

requesting party the right to conduct the actual search." 345 F.3d at 1317. The court remarked that at times, "perhaps due to improper conduct on the part of the responding party," the requesting party itself may need to do its own examination, but noted that the district court had made no findings that Ford had failed to comply properly with discovery requests. *Id.* Consequently, while not categorically forbidding searches of the opponent's computer for withheld evidence, the appellate court found that the record did not justify such unusual relief. "While some kind of direct access might be permissible in certain cases, this case has not been shown to be one of those cases." *Id.*; *accord, Bethea v. Comcast*, 218 F.R.D. 328 (D.D.C. 2003).

The advisory committee notes to the proposed amendments to Rule 34, scheduled to take effect later this year, take a similar approach, suggesting that direct inspection of an opponent's computer should be the exception and not the rule:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. *The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.*

Proposed amendments to Fed. R. Civ. P. 34 advisory committee's note (emphasis added).

This court concludes that the policy espoused by the Eleventh Circuit in the *Ford Motor Co.* case is consistent with the Rules of Civil Procedure, both in their present form and under the proposed amendments. The discovery process is designed to be extrajudicial, and relies upon the responding party to search his records to produce the requested data. In the absence of a strong showing that the responding party has somehow defaulted in this obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance. Forensic inspection

of computer hard drives is an expensive process, and adds to the burden of litigation for both parties, as an examination of a hard drive by an expert automatically triggers the retention of an expert by the responding party for the same purpose. Furthermore, examination of a hard drive inevitably results in the production of massive amounts of irrelevant, and perhaps privileged, information. Courts faced with this inevitable prospect often erect complicated protocols to screen out material that should not be part of discovery. *See, e.g., Playboy Enter., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1054 (S.D. Cal. 1999) (appointing court's expert to conduct examination). Again, this adds to the expense and complexity of the case. This court is therefore loathe to sanction intrusive examination of an opponent's computer as a matter of course, or on the mere suspicion that the opponent may be withholding discoverable information. Such conduct is always a possibility in any case, but the courts have not allowed the requesting party to intrude upon the premises of the responding party just to address the bare possibility of discovery misconduct. *See, e.g., Bethea*, 218 F.R.D. at 329-30.

The standard by which the court determines whether to allow a forensic inspection of the adversary's computer is provided by Rule 26(b)(2). That rule not only permits but requires the court to curtail discovery efforts in a number of circumstances: if the discovery sought is unreasonably cumulative or duplicative or is attainable from some other source that is more convenient or less burdensome; when the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or when the balance of burden and expense outweighs the information's likely benefit, taking into account a number of factors, such as the needs of the case and the importance of the discovery to the issues at stake in the litigation. Because plaintiff had failed to brief her request for a forensic inspection of the law school's computer (or even mention it in her motion), plaintiff did not address any of these crucial issues. The court was

therefore put in a position of interrogating plaintiff's counsel to determine whether the balance of factors under Rule 26(b)(2) favored the relief that counsel requested orally.  In this context, the court inquired about the results of plaintiff's discovery to date, and was given apparently bad information by plaintiff's counsel.  In the motion for reconsideration, counsel assumes that an accurate answer would have materially affected the court's decision.  The assumption is incorrect.  The difference between 50 to 70 work orders (as represented by plaintiff's counsel at the hearing) and 31 work orders (as counsel now contends) is immaterial.  The point is that defendant has made a thorough search of its records and has produced numerous documents showing problems with the adaptive computer equipment.  As the court noted on the record, and now reiterates, it is not likely that an expensive and intrusive examination of defendant's computer system will disclose significantly more work orders for the "interval" period, especially in light of the fact that defendant has produced several paper work orders generated during those months.  The balance of factors under Rule 26(b)(2), and not the gross number of work orders produced, led to the court's decision on September 8, 2006.

In summary, the court concludes that the drafters of Local Rule 7.4 could not possibly have intended to allow a party to move for reconsideration on the basis of the party's own misrepresentation to the court, whether merely negligent or founded on worse culpability.  In any event, even taking into consideration the number of work orders now disclosed by plaintiff, the court concludes that its decision would have been no different had plaintiff's counsel made an accurate representation to the court.  Plaintiff's motion for reconsideration will therefore be denied.

Dated:   September 21, 2006                    /s/  Joseph G. Scoville
                                               United States Magistrate Judge